# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

## No. 10-15958

_____

DENNIS MONTGOMERY, an individual;
MONTGOMERY FAMILY TRUST, a California trust, et al

Plaintiffs,

v.

ETREPPID TECHNOLOGIES, a Nevada LLC; WARREN TREPP, an
individual; EDRA BLIXSETH; OPSPRING, LLC,

Defendants, and

TERI PHAM, Appellant,

v.

MICHAEL J. FLYNN, Appellee

_____

## ANSWERING BRIEF OF APPELLEE- MICHAEL FLYNN, ESQ.

_____

On Appeal from the United States District Court, District of Nevada,
3:06-cv-00056-PMP-VPC (BASE); 3:06-cv-0145-PMP-VPC (MEMBER)

_____

| Michael J. Flynn, Esq. | Carla DiMare, Esq. | Christopher J. Conant, Esq. |
|---|---|---|
| P.O. Box 690 | Law Office of Carla DiMare | 730 17th , Suite 200 |
| Rancho Santa Fe, CA 92067 | P.O. Box 1668 | Denver, CO 80202 |
| Phone: 858-775-7624 | Rancho Santa Fe, CA 92067 | Phone: 303-298-1800 |
| Fax: 858-759-0711 | Phone: 858-775-0707 | Fax: 303-298-1804 |
| Mike@mjfesq.com | CDiMare@att.net | cconant@conantlawyers.com |

Attorneys for Appellee Michael J. Flynn, Esq.

# Table of Contents

I.     JURISDICTIONAL STATEMENT ................................................................ 1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW. ........................... 1

III.   STATEMENT OF THE CASE. ................................................................... 2

IV.   STATEMENT OF FACTS AND PROCEDURAL HISTORY. ...................... 11

V.     ARGUMENT. ............................................................................................. 19

     A.   This Court Lacks Jurisdiction To Hear this Premature Appeal. .................. 20

         (1)    The Decision Appealed From Is Not Final. ................................ 20

         (2)    The Decision Is Not Collaterally Appealable. ............................... 22

         (3)    A Sanction Order Pursuant to §1927 and the Court's Inherent Powers, Which is What We Have Here, Is Not Immediately Appealable. ................................................................................. 25

         (4)    A Reason for Pham's Premature Appeal. ...................................... 26

     B.   Pham's Contentions, that the Sanctions Hearing was a "Contempt Proceeding" and the Sanctions Imposed were a "Criminal" or "Civil" Contempt Penalties, Are Not Correct. ......................................................... 26

         (1)    Pham Cherry-Picks and Takes Part of the Sanctions Order Out of Context. ....................................................................................... 31

         (2)    Civil Contempt Sanctions are Generally Not Appealable Until the Final Judgment. ........................................................................... 34

     C.   The District Judge Correctly Found that the Magistrate Judge's Sanctions Order, Pursuant to 28 U.S.C. §1927 and the Court's Inherent Authority, Was a Nondispositive Matter Subject to the Clearly Erroneous Standard. . 35

     D.   Because the Magistrate Judge had Authority to Rule on the Sanctions Motion, the District Court Did Not Err in Remanding the Sanctions Proceedings Without Pham's Consent. .......................................................... 36

     E.   Pham's Contention that the Sanctions Motion is a "Post-Judgment" Motion is Not Accurate. ....................................................................................... 37

VI.   CONCLUSION ......................................................................................... 38

CERTIFICATE OF COMPLIANCE ...................................................................... 39

STATEMENT OF RELATED CASES .................................................................... 40

PROOF OF SERVICE ........................................................................................... 41

i

# Table of Authorities

## Cases

*Catlin v. United States*, 324 U.S. 229, 65 S. Ct. 631 (1945) .......................... 21, 22, 34

*Chambers v. Nasco, Inc.*, 501 U.S. 32, 111 S. Ct. 2123 (1991) ...................... 30, 33, 36

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221 (1949) ...... 22

*Columbia Record Productions v. Hot Wax Records, Inc.*, 966 F.2d 515 (9th Cir. 1992)

.................................................................................................................. 37

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S. Ct. 2454 (1978) ........................ 24

*Cordoza v. Pacific States Steel Corp.*, 320 F.3d 989 (9th Cir. 2003) .......................... 24

*Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 119 S. Ct. 1915 (1999) ...........

.......................................................................................................... 20, 22, 25

*Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996) ............................................ 20

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001) ...................................................... 20

*Grimes v. San Francisco*, 951 F.2d 236 (9th Cir. 1991) ............................ 29, 32, 35, 36

*Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994) ................................................ 31

*In re Baxter Healthcare Corp.*, 151 F.3d 1148 (9th Cir. 1998) .................................. 24

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003) .................................................................. 30

*In re Snyder*, 472 U.S. 634, 105 S. Ct. 2874 (1985) .................................................. 30, 36

*Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 114 S. Ct.

2552 (1994) .................................................................................................... 29

*John v. Louisiana*, 899 F.2d 1441, *reh. den.* (5th Cir. 1990) 1990 US App. LEXIS

9916 ................................................................................................................ 37

*Koninklijke Philips Electronics, N.V. v. KXD Technology, Inc.*, 539 F.3d 1039 (9th Cir. 1998)..................................................................................... 29, 34

*Maisonville v. F2 America, Inc.*, 902 F.2d 746 (9th Cir. 1990) ........................... 35, 36

*Merritt v. Int'l Brotherhood of Boilermakers*, 649 F.2d 1013 (5th Cir. 1981) ........... 38

*Mohawk Indus., Inc. v. Carpenter,* 130 S. Ct. 599 (2009) ................................. passim

*Shillitani v. United States*, 384 U.S. 364, 86 S. Ct. 1531 (1966) ........................ 28, 29

*Stanley v. Woodford*, 449 F.3d 1060 (9th Cir. 2006)................................. 23, 26, 30, 36

*Starcher v. Correctional Med. Sys.*, 144 F.3d 418 (6th Cir. 1998) .............................. 25

*United States v. Assoc. Convalescent Enterprises, Inc.*, 766 F.2d 1342 (9th Cir. 1985) .................................................................................................................. 20

*United States v. Blodgett*, 709 F.2d 608 (9th Cir. 1983) ....................................... 30, 36

*United States v. Lumumba*, 794 F.2d 806 (2nd Cir. 1986)......................................... 32

*United States v. Wunsch*, 84 F.3d 1110 (9th Cir. 1996)............................................. 33

*Will v. Hallock*, 546 U.S. 345, 126 S. Ct. 952 (2006) ........................................... 22, 23

## Statutes

28 U.S.C. § 1927.................................................................................................. passim

28 U.S.C. § 636.................................................................................................... passim

28 U.S.C. § 1291............................................................................................... 1, 20, 22

## Rules

Circuit Rule 28-2.6.................................................................................................. 40

Fed. R. Ap. P. 32 (a)(7)(c)...................................................................................... 39

iii

## I.   <u>JURISDICTIONAL STATEMENT</u>

Interested Party and Appellee, attorney Michael Flynn, disagrees with the jurisdictional statement set forth by Appellant, attorney Teri Pham, ("Pham").  For reasons discussed herein, this Court lacks jurisdiction over Pham's appeal because the order Pham appeals from was not a "final" decision within the meaning of 28 U.S.C. §1291.  (*See* Argument §A).

## II.   <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW.</u>

1.    Did Pham err by filing a premature appeal, and did her appeal wholly lack merit?  Yes.

2.    Does Pham incorrectly contend that the Sanctions Order amounts to a "contempt proceeding"?  Yes.

3.    Did the trial court properly hold, (at Excerpts to the Record, page 19), that the magistrate judge had authority under 28 U.S.C. § 636(b)(1)(A) to preside over Flynn's Motion for Sanctions, filed under 28 U.S.C. § 1927 or the court's inherent authority, which was nondispositive and subject to the clearly erroneous or contrary to law standard of review?  Yes.

4.    Did the trial court properly remand the sanctions proceedings to the magistrate judge?  Yes.

III.   <u>STATEMENT OF THE CASE.</u>

This appeal arises out of the substantial and serious attorney misconduct of appellant attorney Pham, and attorney Deborah Klar ("Klar")[1] while they were representing Dennis Montgomery, his wife Brenda, and their family trust, ("the Montgomery parties"), in a lawsuit entitled *Montgomery v. Etreppid Technologies, LLC* ("the Etreppid action"). (<u>Excerpts to the Record</u>, ["ER"], Volume, ["V."], I at 1-38, 39-92). During that time, Pham and Klar were partners with Liner Yankelevitz Sunshine Regenstreif, LLP, whose name changed to Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, LLP, (the "Liner firm"). (ER V. I at 76:7-9).

On March 31, 2009, the magistrate judge issued an "Order re Motion for Sanctions" ("Sanctions Order"). (ER V. I at 39-92). In part, it states that attorneys Pham and Klar, their former firm, the Liner firm, and the Montgomery parties, (collectively "the sanctioned parties"), acted:

> [W]illfully reckless, intended to harass, done for an improper purpose, suffused with bad faith ... unreasonably and vexatiously multiplied these

---

[1] Klar's related appeal is pending before this Court as Case No. 10-15960.

2

proceedings ... clear and convincing evidence that ...
Ms. Pham acted in bad faith or conduct tantamount to
bad faith with the intention to undermine this court's
orders for the improper purposed of obtaining a more
favorable forum ... Ms. Pham willfully abused the
judicial process in this court ... they did so to delay or
disrupt this litigation to gain a tactical advantage ...
Ms. Pham multiplied these proceedings, and they did
so unreasonably and vexatiously ... Even if .... Ms.
Pham's conduct was not totally frivolous, the court
finds they were motivated by vindictiveness and bad
faith. ... ... Ms. Pham acted recklessly and with an
improper intent ... Ms. Pham is most certainly
responsible ....Ms. Pham knew, or upon reasonable
inquiry should have known, that during Mr. Flynn's
representation of Mr. Montgomery ... there was no
reason whatsoever for Mr. Montgomery to concern
himself with the state in which Mr. Flynn was
admitted to practice law [because] both duly admitted
pro hac vice ... Every single court or bar entity that
ultimately considered Ms. Klar and Ms. Pham's
campaign to divest this court of jurisdiction over these
matters and force Mr. Flynn to defend his interests
concluded that they were wrong ... Pham... engaged
in stunning misrepresentations of this court's orders
.... and a tortured analysis of this court's three orders
... [t]he conduct of Ms. Klar and Ms. Pham epitomizes
the scorched earth litigation tactics that undermines
citizens' confidence in our courts and our system of
justice.

(ER V. I at 39:16-24, 75:4-25, 80:1-24, 81:6-82:18, 83:17-84:3, 86:3-7,

gen'ly, 1-38, 60:1-61:7, 74-92).

Through her current appeal of the district court's Order, "Order,"

(ER V. I at 1-38), on the aforementioned Sanctions Order, Pham is

trying to undo the above sanctions. However, the fundamental premises of Pham's appeal are willfully incorrect. Additionally, Pham's mischaracterization of facts and law and argument that the 9th Circuit should undo federal sanctions law and 28 U.S.C. § 636, which deals with magistrate judge's powers, are wasteful.

In summary, her appeal is premature, (*infra*, §V. A.); her attempt to label the Sanctions Order as a "contempt" order is incorrect and unsupported, (*infra*, § V. B); the district court's remand to the magistrate judge for "any further proceedings consistent with this order with respect to Flynn's sanction motion," (ER V. I at 24, 36, 37-38), was correct and permissible, (*infra*, § V. C-D); and Pham's contention that the Sanctions Motion is a "post-judgment motion" is similarly without merit. (*Infra*, § V. E).

This case has an extremely long docket and some of its history is outlined in the Statement of Facts, herein. (S*ee* ER V. VII at 1328-1435; *infra* § IV). At this time, Flynn highlights only some of Pham's misstatements, primarily in her "statement of the case," which are important to an overall understanding of the issues on appeal. Pham's misstatements are as follows:

4

1.    In an effort to try to justify her misconduct, Pham insists that she was trying to obtain Montgomery's file from Flynn when she and Klar took over representation of Montgomery in the Etreppid action. (Pham Br., 2-3, 6-7). That is simply not accurate and misleading. *Pham had the file.* (ER V. I at 8:25-9:5 [Pham had access to local counsel's file, emails], 51:4-11, 76:19-77:2 [Pham had Montgomery's file, court filings via PACER, emails], 59:4-9 [Pham had Montgomery's file]; Supplemental Excerpts to the Record [hereinafter "Supp. ER"] V. I at 14:3-15:3 [Pham had correspondence file, discovery].

2.    Pham continuously claims that Mr. Flynn refused to turn over the Montgomery file "in contravention of Massachusetts and California law." (Pham Br., 2). That, too, is willfully misleading. This was a Nevada case, in a Nevada court, applying federal and Nevada law, and Mr. Flynn was admitted pro hac vice in Nevada, which did not require that the file be turned over absent a court order and posting a bond. (ER V. I at 48:11-13, 49:1-4, 52:6-16, 56:13-57:26, 60:19-62:9, 63:20-65:2, 69:9-70:16, 77:3-20, 42:12-15 ; Supp. ER V. I at 10:3-12:8). It is inconceivable that Pham did not know these facts that permeated the record; yet, she forged ahead in Los Angeles, San Diego and

Massachusetts to malign Mr. Flynn notwithstanding these facts, the law, and three clear Nevada Orders. (ER V. I at 42:1-7, 42:12-15, 56:13-57:26, 64:6-13, 69:9-17, 70:3-15).

Nevada law permitted Pham's client, Montgomery, to file a motion requesting the file. In fact, the district court invited Pham to file such a motion in Nevada. (ER V. I at 144:1-4; 60:1-9, 60:24-61:7). However, Pham never filed that motion. (ER V. I at 60:24-61:7). The court found that Pham and Klar did not file a motion in Nevada because that was inconsistent with their bad faith strategy; their clients, Montgomery and his partner, Edra Blixseth, a former billionaire who is now in bankruptcy, did not want to "post [a] bond" or pay Mr. Flynn's attorneys' fees; Pham and Klar did not want to be "hampered" by the United States protective order protecting military and state secrets; they were trying to avoid the Nevada retaining lien; and they had decided to "shop" for another forum and try to wrest jurisdiction from Nevada. (ER V. I at 60:24-61:7; 62:6-9, 64:21-24, 68:22-27, 69:5-8, 69:18-70:16, 75:4-22, 78:13-19, 79:19-27, gen'ly 77:3-82:4).

3.      Pham repeatedly purports that Mr. Flynn committed "ethical violations," (Pham Br., 3, 11). That is simply false. <u>Four</u>

different forums have disagreed with Pham's baseless charges. (ER V. I at 81:14-82:4, 6:9-11:1, 14:23-15:20, 53, 61:8-63:2, 65:3-69:17, 68:7, 69:11-12, 69:18- 70:16, 78:13-19). The Court found, "[e]very single court or bar entity that ultimately considered Ms. Klar and Ms. Pham's campaign to divest this court of jurisdiction over these matters and to force Mr. Flynn to defend his interests concluded they were wrong." (ER V. I at 81:14-82:4). Those decisions are final. (*Id.*) Pham's repetitious and defiant denial of incontrovertible facts, and her habitual position that it is okay for her to misstate the record despite overwhelming evidence and orders to the contrary, is grossly improper. (ER V. I at 39-92). The court found that Pham is the one who committed ethical violations and engaged in other egregious misconduct. (ER V. I at 1-38, 39-92, specifically, 39:20-24, 75:4-86:7, 87:26-88:11, 90:4-16, 56:13-69:17; Supp. ER V. 1 at 10:3-22:11 ["Pham's Top Ten Distortions..."]). In the face of an overwhelming and incontrovertible record, Pham's entrenched insistence that everyone else is wrong and she is right, magnifies why she was sanctioned in the first place.

    4.    Pham contends that Flynn's sanction motion was not against her. (Pham Br., 3, 8, 15). Flynn disagrees. *Pham's name is specifically*

*stated in the sanctions memo, supporting declaration, reply and reply declaration approximately 40 times;* and the first page of the motion it makes clear that it was against Montgomery and his "counsel of record," which was Pham and Klar because they were the only two lawyers that had substituted in at that time. (Supp. ER V. I at 17:13-20:11, 24:17-30:25, 35-96; ER V. I at 39:17-25, 76:5-9; ER V. VI at 1011-1138). Also, Pham opposed the sanction motion by not only filing two declarations that defend *her actions*, but also testifying. (Supp. ER V. I at 19:23-20:11; ER V. V at 859-927). She was also on notice that Flynn was seeking revocation of *her* pro hac vice admission because he said he was seeking revocation of the Liner firm's "attorney**s**" plural, "pro hac vice admissions," and, again, the only attorneys, were Pham and Klar, and they were the attorneys specifically identified throughout his papers. (ER V. VI at 1114:16-17 [emphasis added]).

5.  Pham contends that Flynn represented the Montgomery parties in California matters, and he practices in California with a firm called Flynn & Stillman . (Pham Br., 2, 7). That, too, is not accurate. First, Pham knew then and still knows now that Flynn did not represent Montgomery in any California matters. (ER V. I at 50:4-6,

77:3-6). Pham's client, Montgomery, testified that he "knew of no legal proceedings in which Mr. Flynn represented him in California." (ER V. I at 50:4-6). Pham's statement to this Court is not credible. (Id.) Next, Pham knew that Flynn was admitted pro hac vice in Nevada; every pleading he filed in Nevada only listed his Massachusetts bar number; his letterhead and pro hac vice admission, which are also found throughout the record, stated that he is "only" admitted or licensed in Massachusetts; he resides in Massachusetts and California; the files were in both locations; Montgomery sent payments to both locations; and Flynn & Stillman was dissolved about four years ago (and before Pham got involved). (ER V. I at 55:5-57:26, 62, 54-59, 77:3-5, 77:13-20; Supp. ER V. I at 21:16-26; *see also* Order, doc. #435, p. 10:15-21). So Pham is not correct.

6. Pham contends that she only represented the Montgomery parties "for approximately two months." (Pham Br., 15). That, too, is indisputably contradicted by the record. The court found that Pham represented the Montgomery parties for four months. (ER V. I at 47:18-22). Additionally, emails and filings show that she was involved from at least July 6, 2007, until May 12, 2008, except when on leave. (Supp. ER

9

V. I at 15:3-17). Pham apparently misrepresented the length of her involvement because the magistrate judge considered the sanctioned parties' history of violations, so the longer Pham was involved, the more she is part of that history. (ER V. I at 86:3-7 ["scorched earth litigation tactics"]).

7.     A thread Pham weaves throughout her brief is that the magistrate judge needed Pham's "consent" to hear the sanctions motion. (Pham Br., 1, 2, 20, 23, 30, 39). However, a court order specifically states that the parties had agreed that the court could retain jurisdiction over various matters, including Flynn's sanctions motion. (Supp. E.R. V. I at 33-34). Pham omitted from her brief, and excerpts to the record, the order signed by the district judge and magistrate judge that plainly states that the parties had "agreed" that the court could retain jurisdiction over Flynn's sanctions motion. (Supp. E.R. V. I at 33-34 [doc. #864]). While Pham did reveal a subsequent order that said that court had retained jurisdiction over Flynn's sanctions motion, (Pham Br., 17:1-9, citing ER V. I at 94), that order was a truncated version of the omitted order and did not include the key portion about the court retaining jurisdiction by agreement of the parties. (Id.)   So

Pham omitted that the district court had retained jurisdiction by agreement. (Supp. E.R. V. I at 33-34). Moreover, Pham mislead this Court by repeatedly claiming that the district court did not have "consent." (Pham Br., 1, 2, 20, 23, 30, 39). [2] As such, Pham has omitted key information from her brief which obfuscates the appellate issues. (*Id.*).

It is these types of distortions that are pulling down the legal profession and prove why the Sanctions Order, which describes Pham's misconduct in meticulous detail, was procedurally and substantively correct and should be, and needs to be, affirmed.

## IV.  STATEMENT OF FACTS AND PROCEDURAL HISTORY.

By way of background, over the Christmas and New Year's holidays in 2005-2006 in Reno, Nevada, at a company called Etreppid Technologies, Inc., Montgomery wiped out Etreppid's computers of software or alleged "intellectual property" called "source code." (ER V. I at 2:9-3:5, 95:23-26; *see gen'ly* Order, doc. #435, p. 1-2; Order, doc. #130, p. 6; Order, doc. #645, p. 16; Complaint, doc. #370, p. 2-3).

---

[2] Also, since a time line is important to Pham's arguments, (*infra* V. E.), it is noteworthy that the order Pham cited came down about five months after the order referencing the parties' agreement. (*Compare* Supp. E.R. V. I at 33-34 and ER V. I at 94).

Lawsuits followed in Nevada that were consolidated and are now referred to as the Etreppid action. (ER V. I at 2:9-3:5).

The Etreppid action involved a dispute over who owned the source code that Mr. Montgomery removed from Etreppid's computers. (ER V. I at 2, 40, 47, 51). Montgomery claimed that he owned it, and Etreppid claimed that it was the owner. (ER V. I at 2). Prior to Montgomery's departure from Etreppid in early January 2006, the Department of Defense ("DoD") had paid Etreppid tens of millions of dollars in defense contracts for this purported technology. (ER V. I at 40, 45:1-5, 47:10-13; *see* Order, doc. # 645, p. 8).

Appellee attorney Michael Flynn is a sole practitioner licensed to practice in Massachusetts. (ER V. I at 3:6-18, 42:12-15). In January 2006, he was admitted to practice pro hac vice in Nevada to represent the Montgomery parties. (*Id*.). DiMare, his co-counsel, was admitted pro hac vice in Nevada to represent the Montgomery parties in February 2007. (ER V. I at 6).

During the Etreppid action, the then Director of National Intelligence ("DNI"), John Negroponte, asserted the military and states secretes privilege. (ER V. I at 47 [referring to doc. #83, which is the

12

government's affidavit asserting privilege], 69, 6).

In April of 2007, through various Department of Defense ("DoD") filings seeking to unseal or expose the nature of the purported technology, the government sent a message that the disputed technology or "source code" was non-existent, or had been misrepresented. (ER V. I at 5:7-6:8; *see also* Order at doc. #147, p. 2-4; DoD Reply at doc. # 172).

On July 9, 2007, Flynn and DiMare filed a routine motion to withdraw based on nonpayment of attorney fees and conduct that made continued representation unusually difficult. (ER V. I at 6:9-13, 47:6-14, 145-148; ER V. VI at 1276-1279; Supp. ER V. I at 97-102). Because the United States had invoked the military and states secrets privilege, their withdrawal was not routine. (ER V. I at 6:9-13, 47:6-14, 69). Their motion was granted in September 2007, (ER V. I at 10, 52), but they were still required to protect the military and state secrets in their files. (ER V. I at 10:7-21, 47:6-13, 145-148, 6:9-16, 69:5-70:15).

Pham, Klar and their employer, the Liner firm, began to represent Montgomery in July 2007. (ER V. I at 6, 47, 76:5-9). Although Flynn and DiMare's motion to withdraw was pending, Montgomery served a

letter on Flynn and DiMare terminating their services on August 1, 2007. (ER V. I at 6:9-7:11, 47:7-49:6).

Even though Flynn and DiMare had filed a neutral motion to withdraw, (ER V. VI at 1276-1279; Supp. ER V. I at 97-102), once Pham and Klar began to represent Montgomery, they aggressively began a blitzkrieg to "crush" Mr. Flynn. (ER V. I at 83:17-24, 81:14-82:4).

On August 3, 2007, Pham filed a lawsuit against Flynn on behalf of Montgomery in Los Angeles. (ER V. I at 7:12-21, 15:10-15, 49:7-50:10, 69:18-70:16, 81:14-82:4). This complaint was dismissed in November 2007 and the Los Angeles court said:

> California is only involved in this matter due to an
> unsubstantiated allegation by [Montgomery] that
> [Flynn] misrepresented to him that [he] was licenced
> in California. This case is before a California court for
> the transparent purpose of having this court
> countermand the orders of the Nevada District Court.
> California has no interest in doing so. Nevada, on the
> other hand, has a great public interest in adjudicating
> this dispute. ... Flynn is a Massachusetts licensed
> lawyer, who appeared pro hac vice in Nevada on
> behalf of [the Montgomery parties], solely in Nevada
> cases, before Nevada courts applying Nevada law.
> The Nevada District Court has already made
> substantial orders concerning the subject matter of
> this action by giving [Flynn] a 'retaining lien' over the
> 'client files' that [Montgomery] seeks, by this action,
> to have returned to him. The Nevada District Court
> case concerns allegations of wrongdoing against the

> current Nevada Governor and allegations that
> [Montgomery] made misrepresentations in Nevada.
> (ER V. I at 69:18-70:16).

Additionally, not only was that Los Angeles case dismissed, years later, in the Sanctions Order, the district court found that Montgomery committed perjury with regard to that lawsuit and referred his perjury to the Nevada U.S. Attorney's Office. (ER V. I at 24-28, and particularly 28:12-20).[3]

On September 7, 2007, Montgomery petitioned the San Diego Bar Association to arbitrate a fee dispute against Flynn in San Diego. (ER V. I at 10, 53). Pham filed the petition on behalf of Montgomery. (*Id.*). The petition was dismissed December 3, 2007. (ER V. I at 15, 53).

On September 25, 2007, on behalf of Montgomery, Pham also filed a state bar complaint against Flynn in Massachusetts. (ER V. I at

---

[3] Flynn argued that Pham aided in suborning Montgomery's perjury. (ER V. IV at 1110-1111; Supp. E.R. V. I at 32:20-210). Although the magistrate judge found that Pham made "intentional misrepresentations to the Commissioner;" her "testimony" was "disingenuous;" Pham "knew or should have known" that Montgomery was not being truthful; she acted in "bad faith;" committed numerous "ethical violations," amongst other egregious misconduct, the court did not find that Pham "intentionally suborned the perjury." (ER V. I at 68, 69, 75, 77, 84-86). Montgomery's appeal of the perjury finding has been dismissed, so his perjury is established. (*See* Statement of Related Cases, *infra*).

15

12:12-16, 14:23-15: 4, 61:8-62:24, 81:14-82:4).  Five weeks later, it, too, was dismissed. (*Id.*)

Also, during that same time period, twice Pham filed two lengthy applications for a writ of possession in Los Angeles, in an effort to obtain Flynn's attorney file on Montgomery, and both were denied.  (ER V. I at 11, 14, 58-59, 65-69, 81:14-82:4).  Pham appeared at both hearings, and the second time she was "intentionally" untruthful to the Los Angeles Commissioner.  (ER V. I at 68:10-27).

In short, all of Pham and Klar's efforts on behalf of Montgomery to "crush [Mr. Flynn] into submission" *failed*.  (ER V. 1 at 83 ["The court concludes that the animosity Mr. Montgomery and Ms. Blixseth harbored for Mr. Flynn was a catalyst for the litigation strategy to insure—through any means possible—that Mr. Flynn would never be paid and to crush him into submission in the process."], 81:14-82:4).

On April 24, 2008, after successfully fending off Pham and Klar's nationwide harassment litigation, Flynn filed his motion for sanctions.  (ER V. I at 15:23-16:10 [doc. #545, 545-2, 546, 547, 548, 550-557 {subsequently sealed}];  ER V. VI at 1011-1138; Supp. ER V. I at 73-96; Supp. ER V. I at 8:20-9:16).  On May 13, 2008, the Liner firm

extensively opposed the sanctions motion and filed opposition under seal. (ER V. I at 16:8-10 [doc. #597]). Klar, Pham and Blixseth filed declarations in opposition. (*Id.*; Supp. ER V. I at 8:20-9:16). Mr. Flynn filed a reply on May 27, 2008. (ER V. I at 16:8-10 [doc. #633, #635, # 635-1, #635-2, #637, #638 {later sealed}]; Supp. ER V. I at 35-72).

On July 25, 2008, the magistrate judge ordered an evidentiary hearing on the motion for sanctions for August 21, 2008. (ER V. I at 16:11-20 [doc. #770]). That hearing took place on the appointed date, and the Liner firm defended itself and its lawyers, Pham and Klar, who were present. (*Id.*; ER V. I at 76; ER V. V at 705-988). The Liner firm only called Pham to testify, and on the stand she defended *her* actions. (ER V. V at 859-946, 952-953). Montgomery had separate counsel. (ER V. V at 709-710, 725). The hearing took the full day. (ER V. V at 707-986).

After that, the Etreppid action was settled in September 2008, when Montgomery and Blixseth confessed judgments for $20 million and $5 million to Etreppid and its owner, Warren Trepp, respectively. (ER V. I at 16:21-17:3, ER V. IV at 677-703). The settling parties "agreed" that the court should retain jurisdiction over various matters,

17

including, and most significantly here, Flynn's motion for sanctions. (Supp. ER V. I at 33-34). As mentioned above, Pham omitted from her brief *and* excerpts to the record that key order referencing the "agreement." (*Supra* § III, [*see* "(7)"]).

On January 8, 2009, the court held a mandatory settlement conference on the judgment for attorneys' fees and costs owed to attorney Flynn (and DiMare) by the Montgomery parties. (ER V. I at 16:24-26). The Montgomery parties continued to refuse to pay their legal bills, (id.), despite the millions of dollars he had received the prior two years from Blixseth, his partner.[4]

On March 31, 2009, the magistrate judge issued the Sanctions Order and sanctioned the sanctioned parties, as described above. (ER V. I at 17:4-18:4, 39-92). Pham's contention that the Sanctions Order only addressed "three orders" at dockets 291, 256, and 296, is knowingly not

---

[4] Montgomery and his wife were refusing to pay their legal bills even though they were living a lavish lifestyle and owed the money, and Montgomery repeatedly thanked his attorneys, Flynn and DiMare. Montgomery testified that he received a "salary" of $100,000 a month from Blixseth, and he had received millions in bonuses the prior year, bought a two-plus million dollar home in Washington, owned a Reno home, and bought his healthy, but unemployed, daughter an expensive condo. (*See e.g.* Flynn decl., doc. #904, ¶4 and Exh. 1 [Montgomery testifies to receiving $100,000 a month]; Flynn decl. doc. #927, ¶3).

accurate.  The Sanctions Order also addressed Pham's attempts to circumvent or "undermine the effect of the United States protective order," and therefore the court's work to preserve military and state secrets, and to "shop for a friendlier forum."  (ER V. I at 69:5-8, 47:6-27, 48:20-27, 51:20-26, 52, 63:13-64:24, 67 [findings 139, 47, 50, 56, 71, 75 122, 134]; see also ER V. I at 145-148).

On April 5, 2010, the district court confirmed the Sanctions Order against Montgomery, and sent it back to the magistrate judge for further proceedings with regard to Pham, Klar and the Liner firm.  (ER V. I at 24, 36, 37-38).

Flynn then filed a motion asking the magistrate judge to conform the Sanctions Order to the district judge's Order.  (Pham Br., 5; ER 197-215).

Pham and Klar then filed premature notices of appeal.

Flynn incorporates here his Opposition to Pham's Objections to the Sanctions Order, (Supp. ER V. I at 1-32), and the Sanctions Order Findings of Fact, 1-143. (ER V. I at 39-70).

## V.    <u>ARGUMENT.</u>

Actions a court may take regarding the supervision of attorneys

are reviewed for an abuse of discretion. *See Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996). A district court's award of sanctions under §1927 and the court's inherent powers is similarly reviewable for abuse of discretion. *See United States v. Assoc. Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1345 (9th Cir. 1985) [Sect. 1927]; *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) ["We review a court's imposition of sanctions for abuse of discretion."]

## A. This Court Lacks Jurisdiction To Hear this Premature Appeal.

Sanctions against a party or a party's attorney are generally not immediately appealable, and appeal lies only after entry of a final judgment in the case. *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 202, 119 S. Ct. 1915, 1919 (1999).

### (1) The Decision Appealed From Is Not Final.

Circuit courts of appeals have jurisdiction over appeals from all final decisions of the district courts (except limited cases where direct review lies with the U.S. Supreme Court). *See* 28 U.S.C. §1291. A "final decisio[n]" is typically one "by which a district court disassociates itself from a case," *Mohawk Indus., Inc. v. Carpenter,* 130 S. Ct. 599, 604-605 (2009), or "ends the litigation on the merits and leaves nothing

for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 635 (1945) [superseded on other grounds].

Here, there is no final decision and therefore this Court has no jurisdiction to consider the instant appeal. In the April 5, 2010 Order that Pham appeals (Pham Br., 1), the district court remanded the sanctions motion to the magistrate judge for "any further proceedings consistent with this order with respect to Flynn's sanction motion." (ER V. I at 24, 36, 37-38). Pham knows that the district court remanded it for "further proceedings." (Pham Br. 7, 39). She also knows that Flynn filed a motion to conform the magistrate judge's Ruling to the district court's Order, which is pending. (Pham Br., 5). As such, there is further work for the court to do and the decision from which Pham appealed was not final.

While it is true that a final judgment has been entered against Montgomery and Blixseth, (ER V. IV at 676-704), that does not "finalize" the district court's April 5, 2010 Order. (ER V. I at 24, 36, 37-38). If that were true, then every time a court enters a final judgment as to some issues, but retains jurisdiction to resolve other issues, a

party could appeal anything at any time and all law regarding "final decisions" would be meaningless. Pham should not be permitted to use Montgomery and Blixseth's final judgment as an excuse to circumvent or bypass the "final decision" jurisdictional requirement set forth in *Catlin* and *Mohawk*, in her efforts to prematurely get the case to the Ninth Circuit. *See Mohawk Indus., Inc.,* 130 S. Ct. at 604-605; *Catlin,* 324 U.S. at 233, 65 S. Ct. at 635.

### (2) The Decision Is Not Collaterally Appealable.

The "collateral order doctrine" is a practical construction of the final judgment rule that allows for interlocutory review of a "narrow class of decisions that do not terminate the litigation, but are sufficiently important and collateral to the merits that they should nonetheless be treated as final." *Will v. Hallock*, 546 U.S. 345, 347, 126 S. Ct. 952, 956 (2006). Broadly, the doctrine renders interim "collateral orders" appealable under 28 U.S.C. §1291, if they meet a three-part test. *Cunningham,* 527 U.S. at 205, 119 S. Ct. at 1920.

The collateral order doctrine had its genesis in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221 (1949). Whether interim orders fall within the "small class" of appealable collateral orders under *Cohen* is determined by a three-part test: (1) the order

must conclusively determine a disputed question; (2) the order must resolve an "important question," completely separate from the merits of the action; and (3) the order must be effectively unreviewable on appeal from a final judgment in the case. *Mohawk Indus., Inc.,* 130 S. Ct. at 605. The conditions for a collateral order appeal are stringently applied. *Mohawk Indus., Inc.,* 130 S. Ct. at 605; *Will,* 546 U.S. at 349, 126 S. Ct. at 957.

Here, this appeal of the Order on the Objections to the Sanctions Motion under 28 U.S.C. §1927 and the court's inherent powers is not immediately appealable under the *Cohen* line of cases because the Ninth Circuit has specifically held that orders imposing sanctions against attorneys pursuant to §1927 do not fit within the "small category of collateral orders" contemplated by *Cohen*. *See Stanley v. Woodford*, 449 F.3d 1060, 1064-1065 (9th Cir. 2006) [no immediate appeal of sanction order made pursuant to §1927 and court's inherent authority].

Even assuming *Stanley* did not exist, under a *Cohen* analysis, this appeal does not satisfy the three part test necessary to give this Court jurisdiction over the instant appeal. First, there is no conclusive

determination of a disputed question with regard to Pham, Klar or the Liner firm. *See In re Baxter Healthcare Corp.*, 151 F.3d 1148, 1149 (9th Cir. 1998) [appeal dismissed for lack of jurisdiction]. Again, the Order on Pham's Objections remanded the matter to the magistrate judge for "any further proceedings consistent with this order with respect to Flynn's sanction motion." (ER V. I at 24, 36, 37-38; Pham Br. 7, 39). That Order therefore remains subject to ongoing district court modification. *See In re Baxter Healthcare Corp.*, 151 F.3d at 1149. The district court only made a final determination on the Sanctions Order with regard to Montgomery, and judgment has since entered in favor of Flynn with regard to Montgomery. (ER V. II at 1171-72).

Second, the Order on the Objections appealed from does not decide an "important" issue completely separate from the merits of the case. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S. Ct. 2454, 2458 (1978) [superseded on other grounds]. Here, sanctions against Pham do not rise to the level of "importance" in this analysis. *See Cordoza v. Pacific States Steel Corp.*, 320 F.3d 989, 996-997 (9th Cir. 2003) [compensation issue fell short of meeting strict importance requirement]. "The Supreme Court has declined to extend the collateral

order doctrine to cover appeals from judgment of even the most

sweeping import." *Starcher v. Correctional Med. Sys.*, 144 F.3d 418,

423 (6th Cir. 1998). Pham's concern about sanctions being levied

against her pending a final judgment from the district court does not

rise to a sufficient level of importance to justify invoking the "collateral

order" rule, let alone rise to a level of "sweeping import."

Third, the Order on the Objections is not unreviewable—it can be

vindicated by means other than this appeal. *See Mohawk Indus., Inc.,*

130 S. Ct. at 605. Pham can and must wait for the magistrate judge

and district judge's final disposition.

### (3) A Sanction Order Pursuant to §1927 and the Court's Inherent Powers, Which is What We Have Here, Is Not Immediately Appealable.

Historically the Ninth Circuit permitted collateral order appeals

by attorneys sanctioned for vexatiously multiplying the proceedings, but

*Cunningham*, 527 U.S. at 210, 119 S. Ct. at 1923, changed that.

*Cunningham* found that an order imposing non-contempt sanctions

against nonparty attorneys are generally not immediately appealable.

*Id.*

While *Cunningham* dealt with Rule 37 sanctions, the Ninth

Circuit in *Stanley v. Woodford* held that *Cunningham* extends to

25

sanctions imposed under § 1927, the authority under which the Pham was sanctioned. *See Stanley v. Woodford*, 449 F.3d 1060, 1064-1065 (9th Cir. 2006), As such, a sanction order against an attorney made pursuant to 28 U.S.C. § 1927 and the court's inherent authority is not immediately appealable. *See Stanley,* 449 F.3d at 1064-1065.

### (4)   A Reason for Pham's Premature Appeal.

After the Sanctions Order was issued against Pham, the Liner firm terminated her employment. Shortly thereafter she sued the Liner firm in *Pham v. Liner, Grode, Stein, Yakelevitz, Sunshine*, State of California, Los Angeles Superior Court, Santa Monica, SC106289 (2009). (*See also* Pham Br., 6:1-4). Evidence indicates that Pham is trying to escalate the attorney fees that Liner's insurance carrier spends to defend her as leverage to force the Liner firm to settle, which this premature appeal would surely help accomplish. Flynn and this Court got caught in the cross-fire, spending substantial time on Pham's improper appeal.

### B.   Pham's Contentions, that the Sanctions Hearing was a "Contempt Proceeding" and the Sanctions Imposed were a "Criminal" or "Civil" Contempt Penalties, Are Not Correct.

As a vehicle to get before the Ninth Circuit, Pham incorrectly labels the sanctions as "contempt sanctions." (Pham Br., 4, 18, 21, 25-

30, 33). Her position is unsupported. (Pham Br., 25-26). Pham's
argument is that they are "really contempt penalties," (Pham Br., 26),
but they "really" are not for the factual and legal reasons in this section,
V. B.

Preliminarily, as mentioned above, the parties agreed that the
court could retain jurisdiction over Flynn's sanction motion. (Supp.
E.R. V. I at 33-34). So even assuming for the sake of argument that the
sanctions were contempt sanctions, and they are not, the magistrate
judge had authority to issue "contempt" sanctions, since the parties
consented to her jurisdiction. *See* 28 U.S.C. § 636(c). This Court's
analysis on this issue could end here.

However, the analysis need not end because there are additional
reasons Pham is wrong in suggesting that the sanctions imposed
against her were "contempt" sanctions. Mr. Flynn filed a motion for
sanctions under 28 U.S.C. § 1927 and the court's inherent powers for
"'bad faith' that 'unreasonably and vexatiously multiplied the ...
proceedings.'" (ER V. I at 15:23-24, 70-92; ER V. VI at 1109-1104
[motion]). It was not a motion for contempt. (*Id.*) Also, the Sanctions
Order is not labeled a "contempt order," it does not impose a daily

penalty for non-compliance with any order, nor does it hold Pham, or anyone else, in contempt. (ER V. I at 39-92). By contrast, while being represented by the Liner firm, Montgomery had been specifically held in contempt and fined $2,500 per day to compel his compliance with previous court orders. (ER V. I at 83:6-13). However, there was no such fine tied to this Sanctions Order. Finally, Pham has not refused compliance of the Sanctions Order, nor has she been held in contempt for refusing to comply with it. (Pham Br.).

Next, while it is true that a contempt order is characterized either civil or criminal depending on its primary purpose and the character of the sanction imposed, *see Shillitani v. United States*, 384 U.S. 364, 369, 86 S. Ct. 1531, 1535 (1966), here *there is no contempt order*.

Additionally, the sanctions do not meet the tests for either criminal or civil contempt. As this Court stated in *Koninklijke Philips Electronics, N.V. v. KXD Technology, Inc.*, "the distinction between the two forms of contempt lies in the intended effect of the punishment imposed. The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive." *Koninklijke Philips Electronics, N.V. v. KXD Technology, Inc.*, 539 F.3d 1039, 1042

28

(9th Cir. 1998).

A criminal contempt proceeding would be characterized by the imposition of an unconditional sentence for punishment or deterrence. *Shillitani,* 384 U.S. at 370; see *also Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 829, 114 S. Ct. 2552, 2558 (1994). "The test may be stated as: what does the court primarily seek to accomplish by imposing sentence?" *Shillitani,* 384 U.S. at 370. Here there was no imposition of any sentence.

A contempt order is civil if it either "coerce[s] the defendant into compliance with the court's order, [or] compensate[s] the complainant for losses sustained. *Int'l Union,* 512 U.S. at 829, 114 S. Ct. at 2558. Here there was no coercion and the sanctions imposed on Pham do not meet this definition. In *Grimes v. San Francisco,* 951 F.2d, 236, 240 (9th Cir. 1991), the court found that proscriptive sanctions charging $500 per day did not even amount to a finding of civil contempt and was nondispositive.

Here, the sanctions were imposed on Pham for unreasonably and vexatiously multiplying the proceedings, her bad faith conduct and willful disobedience with court orders, to compensate Mr. Flynn, and to

serve the interests of justice, at least. (*See* ER V. I at 39-92). Such misconduct is sanctionable under 28 U.S.C. §1927 and the court's inherent powers and constitutes grounds for sanctions wholly independent of contempt sanctions. *See* 28 U.S.C. §1927; *Stanley*, 449 F.3d at 1062 ["Under 28 U.S.C. § 1927 and the court's inherent authority, the Magistrate Judge found Leavitt liable, not for either civil or criminal contempt, but for sanctions in the amount of $10,356.00 . . . ."]; *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123 (1991); *see also In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003) [distinguishing between sanctions imposed under contempt authority and a court's inherent authority within the bankruptcy context].

Additionally, the choice of sanctions selected by the magistrate judge were the type of sanctions that are permissible and have been imposed under 28 U.S.C. § 1927 and the court's inherent powers. *See Chambers,* 501 U.S. at 43-46, 111 S. Ct. at 2133 [imposition of attorney fees and costs]; *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) [excess costs and fees]; *In re Snyder*, 472 U.S. 634, 644, 105 S. Ct. 2874, 2880 (1985) [disciplining attorney, suspension or disbarment].

The Sanctions Order was not on its face or under statute, a

30

contempt order. The sanctions order did not arise from contempt proceeding and it was entirely the creature of 28 U.S.C. § 1927 and the court's inherent authority.

### (1) Pham Cherry-Picks and Takes Part of the Sanctions Order Out of Context.

Pham's contention that the "Magistrate Judge herself identified the sanctions against Pham as being for ... contempt of the District Court's orders", (Pham Br., 26), patently takes the magistrate judge's words out of context, ignores the remainder of the Sanctions Order, and reflects a misunderstanding of contempt sanctions. (*See* ER V. I at 39, 91).

Pham's contention that she was only held 10% responsible, (a figure that seems much too low considering Pham's misconduct, [*supra*, § III.]), so it was "punitive" to hold her jointly and severally liable for $204,411.00, (Pham Br., 26-27), is misplaced. A court may hold sanctioned parties jointly and severally liable. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994); *see also* ER V. I, 28-29.

Pham's contention that community service is "criminal in nature," (Pham Br., 27), is also unsupported by law. Pham misstates the case she cited to support her position, *United States v. Lumumba*, 794 F.2d

806, 808-09 (2nd Cir. 1986) [attorney held in contempt]. The *Lumumba* decision does not hold or state anywhere that community service amounts to criminal contempt. *See Lumumba*, 794 F.2d at 808-809. Also, as this Court said in *Grimes v. San Francisco* concerning Rule 37 sanctions, "the court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even." *Grimes,* 951 F.2d at 241.

Pham's contention that "none" of her misconduct occurred in the presence of the magistrate judge, and so the magistrate judge had no authority to exercise "contempt authority," is not true. Once again, Pham crafts an argument without truthfully acknowledging what actually occurred in the trial court below. Pham's conduct did, in fact, "occur" in the presence of the magistrate judge. For example, in front of the magistrate judge Pham "unreasonably and vexatiously multiplied the[] proceedings," (ER V. I at 39:23-24); "multiplied the[] proceedings ... resulting in an increase in ... a tremendous burden on the court to sort through this byzantine web of misconduct," (ER V. I at 75:10-12); "drafted" Montgomery's perjured declaration that was filed in Nevada, (ER V. I at 57:3–26, 39:17-18, 84:11-86:7); filed a declaration in

opposition to Flynn's motion for sanctions, which was before the
magistrate judge (filed under seal May 2008 with Montgomery's
opposition to Flynn's motion for sanctions); tried to circumvent or
violate the U.S. protective order protecting military and state secrets,
(ER V. I at 61:8-65:2); testified in Nevada in front of the magistrate
judge who essentially found Pham not credible, (ER V. I at 52, 57:3-
26,85:11-20, 69:9-17, 88:9-11); and engaged in "scorched earth litigation
tactics that undermine citizen's confidence in our court and our system
of justice." (ER V. I at 86:3-7).

Moreover, the court has inherent power to sanction a party's
misconduct occurring outside the court's proceedings so long as the
sanctionable conduct has a "nexus with the conduct of the litigation
before the court." (ER V. I at 29, citing *United States v. Wunsch*, 84
F.3d 1110, 1115-16 (9th Cir. 1996); *see also Chambers,* 501 U.S. at 57,
111 S. Ct. at 2139). Pham's misconduct clearly had a nexus with the
Nevada litigation. Los Angeles, San Diego, and Massachusetts each
cited the Nevada litigation in their denial of Pham's frivolous
complaints against Mr. Flynn. (*Supra* § IV).

Pham's contention that the $200,000 in monetary sanctions, five-

33

year prohibition on pro hac admission to practice in Nevada, and
community service, (Pham Br., 29), "exceeds the $5,000 contempt
authority of a magistrate judge under section 636(e)(5)," is
unpersuasive because, again, these are not contempt sanctions. (*Supra*,
§V. B).

### (2) Civil Contempt Sanctions are Generally Not Appealable Until the Final Judgment.

Civil contempt orders and orders imposing sanctions against
parties generally are not "final," and thus not appealable until the final
judgment. *Koninklijke Philips Electronics, N.V.,* 539 F.3d at 1042.

As mentioned above, although we have a final judgment against
Montgomery and Blixseth, (ER V. IV at 676-704), there is more work for
the court with regard to the Sanctions Order. (ER V. I at 24, 36, 37-38).
So even assuming it was a contempt proceeding, and Mr. Flynn has set
forth reasons why it is not, Pham should not be permitted to use the
Montgomery/Blixseth final judgment as an excuse to circumvent or
bypass the "final decision" jurisdictional requirement set forth in *Catlin*
and *Mohawk*, in her efforts to prematurely get the case before the Ninth
Circuit. *See Mohawk Indus., Inc.,* 130 S. Ct. at 604-605; *Catlin,* 324
U.S. at 233, 65 S. Ct. at 635.

C. **The District Judge Correctly Found that the Magistrate Judge's Sanctions Order, Pursuant to 28 U.S.C. §1927 and the Court's Inherent Authority, Was a Nondispositive Matter Subject to the Clearly Erroneous Standard.**

As mentioned above, the magistrate judge issued sanctions under 28 U.S.C. §1927 and the court's inherent powers. (ER V. I at 17:4-6).

Magistrate judges are generally empowered to "hear and determine" any pretrial motion or other matter, except for the "dispositive motions" enumerated. *See* 28 U.S.C. § 636(b)(1)(A). Because sanctions orders are "nondispositive of a claim or defense, magistrate judges have power to impose sanctions under F.R.C.P. 11 or 37. *See Maisonville v. F2 America, Inc.*, 902 F.2d 746, 747 (9th Cir. 1990) [sanctions imposed were not dispositive of a claim or defense of a party].

The district court correctly found that "[s]anctions under § 1927 or the Court's inherent power therefore are nondispositive, and subject to the clearly erroneous or contrary to law standard of review [footnotes omitted]." (ER V. I at 19:11-20:2).

Case law shows that the following types of sanctions are nondispositive: proscriptive sanctions charging $500 per day, *Grimes*, 951 F.2d at 240; imposition of attorney fees and costs and controlling

35

admission to its bar, *Chambers,* 501 U.S. at 45-46, 111 S. Ct. at 2132-2133; excess costs and fees, *United States v. Blodgett*, 709 F.2d at 610; and disciplining an attorney, suspension or disbarment, *In re Snyder*, 472 U.S. at 644, 105 S. Ct. at 2880.

The district court then correctly reviewed the magistrate judge's order under the "clearly erroneous or contrary to law standard of review." *See* 28 U.S.C. § 636(b)(1)(A); ER V. I at 20:1-2, 24:7, 26:19-26, 29:6-7, 34:6-8, 36:1-5, 36:11-13. Accordingly, there was no error. *See Grimes,* 951 F.2d at 240 [rule 37]; *Maisonville,* 902 F.2d at 747-748 [rule 11]; *Stanley,* 449 F.3d at 1064 [analogizing sanctions under § 1927 and inherent powers to rule 11 or 37 sanctions].

For the aforementioned reasons, Pham's contention that the sanctions motion was a "dispositive matter which should have been deemed a report and recommendation," (Pham Br., 30-39), is wrong.

### D. <u>Because the Magistrate Judge had Authority to Rule on the Sanctions Motion, the District Court Did Not Err in Remanding the Sanctions Proceedings Without Pham's Consent.</u>

Pham's contention that the magistrate judge needs Pham's "consent" to further rule on the sanctions motion is wrong for at least two reasons. (Pham Br., 2, 39). First, "consent" was provided by the

parties.  (Supp. E.R. V. I at 33-34).  So even assuming *arguendo* that

consent was needed, that ship has sailed.  Second, section 28 U.S.C. §

636 specifically states that "a judge may designate a magistrate

[magistrate judge] to hear and determine any pretrial matter ..."  28

U.S.C. §636(b)(1)(A), and the issue of sanctions is a pre-trial matter.  As

such, Pham's permission is irrelevant and unnecessary.

### E.   Pham's Contention that the Sanctions Motion is a "Post-Judgment" Motion is Not Accurate.

A magistrate judge cannot hear and determine post-trial motions

without the parties consent.  *See Columbia Record Productions v. Hot*

*Wax Records, Inc.*, 966 F.2d 515, 516 (9th Cir. 1992).  However, Flynn's

sanctions motion is not a "post-trial motion."  *See* 28 U.S.C. § 636 (b)(1).

The motion is a permissible pre-trial motion, it was filed before the

judgment, it clearly addressed pre-trial matters, and it did not lose its

status as a pre-trial matter because a judgment was entered against

Montgomery and Blixseth after the sanctions motion was filed.  *Id.;*

*John v. Louisiana*, 899 F.2d 1441, *reh. den.* (5th Cir. 1990) 1990 US App.

LEXIS 9916 [nothing in the act precludes a magistrate from making a

recommendation on an ancillary issue, such as sanctions, after the

merits of the case have been decided]; *Merritt v. Int'l Brotherhood of*

*Boilermakers*, 649 F.2d 1013 (5th Cir. 1981) [court rejects the argument that the magistrate was without jurisdiction to assess sanctions after the district court had dismissed the case by pointing out that "discovery issues are by definition pretrial matters"].

## VI.  CONCLUSION

For all of the above reasons, this Court should affirm the district court and deny Pham's improper appeal, which wholly lacks merit. Attorney Pham has committed substantial attorney misconduct and sanctions against her are necessary and important.


Dated, October 18, 2010:


/s/ Christopher J. Conant
Christopher J. Conant, Esq.
Michael J. Flynn, Esq.
Carla DiMare, Esq.
Attorneys for the Appellee, Michael J. Flynn

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. Ap. P. 32 (a)(7)(c) and Ninth Circuit Rule 32-1, I certify that the Appellee Michael J. Flynn's Answering Brief is proportionally spaced in serif font (Century type style), has a typeface of 14 points, and contains 7,810 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This Brief was prepared using Microsoft Word and the word court was determined using the Microsoft Word word count application.

October 18, 2010                              /s/ Christopher J. Conant
                                             Christopher J. Conant, Esq.

## STATEMENT OF RELATED CASES

Appellee only partly agrees with Pham's Statement of Related Cases.

With regard to the second case listed by Pham, she omitted information in her Statement of Related Cases description that the Ninth Circuit may want, or that should have included. *See* Circuit Rule 28-2.6 ["shall include ... its relationship to the case being briefed."]. The case of *Montgomery, et al, v. Sandoval, et al*, Case No. 09-15134, listed by Pham, was dismissed for "failure to prosecute" on October 5, 2009, over a year ago. That fact that it was dismissed was not set forth in Pham's said Statement. Pham's inclusion of that fact in a foot note in the middle of her brief, in an appeal involving many cases, does not cure Pham's non compliance in her Statement of Related Cases.

October 18, 2010                      /s/ Christopher J. Conant
                                      Christopher J. Conant, Esq.

**PROOF OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 18, 2010 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that the following individuals are not participants in this appeal but will receive service of the foregoing as they are interested parties to this appeal.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Gary R. Goodheart
Bradley S. Schrager
Jones Vargas
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada
Attorneys for Deborah Klar

Ellyn S. Garofalo
Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP
1100 Glendon Avenue
Los Angeles, CA 90024

October 18, 2010                    /s/ Christopher J. Conant
                                    Christopher J. Conant, Esq.

41