# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

## No. 10-15958

---

## DENNIS MONTGOMERY, an individual; MONTGOMERY FAMILY TRUST, a California Trust,

### Plaintiffs,

### v.

## ETREPPID TECHNOLGIES, a Nevada LLC; WARREN TREPP, an individual; EDRA BLIXSETH; OPSPRING, LLC,

### Defendants,

### and

## TERI PHAM,

### Appellant,

### v.

## MICHAEL FLYNN,

### Movant - Appellee.

---

On Appeal From an Order of the
United States District Court for the District of Nevada

3:06-cv-00056-PMP-VPC (BASE); 3:06-cv-0145-PMP-VPC (MEMBER)

---

## APPELLANT'S REPLY BRIEF

---

JOHN FRANKOVICH, NV Bar No. 667
LEIGH GODDARD, NV Bar No. 6315
DEBBIE LEONARD, NV Bar No. 8260
McDONALD CARANO WILSON LLP
100 W. Liberty St., 10th Floor, P.O. Box 2670
Reno, Nevada 89505
(775) 788-2000   (775) 788-2020 Fax
Attorneys for Appellant Teri T. Pham

# TABLE OF CONTENTS

SUMMARY OF REPLY ................................................................1

ARGUMENT ............................................................................2

A.   Flynn's Rendition of the "Facts" is Unsupported By Evidence
     and, in Any Event, is Irrelevant to the Issues on Appeal .............2

B.   The Court Has Jurisdiction To Hear This Appeal ......................4

     1.   The District Court's April 5, 2010 Order Is Collaterally
          Appealable. ...................................................................4

          a.   The District Court's April 5, 2010 Order is a
               Conclusive Determination as to the Magistrate
               Judge's Authority to Issue Contempt Sanctions
               and the Standard for Review of the Magistrate
               Judge's Sanctions Order. ........................................6

          b.   A Magistrate Judge's Authority to Issue Contempt
               Sanctions and the Standard for Review of a
               Magistrate Judge's Sanctions Order are Important
               Issues Separate From the Merits of the Underlying
               Action and the Sanctions Request Itself. ..................8

          c.   The Harm From Denial of An Immediate Appeal
               Would Be Irreparable, and the District Court's
               Order Would Be Effectively Unreviewable. .............9

     2.   Consideration of Pham's Appeal Will Not Result in
          Piecemeal Appellate Review Because the District Court
          Has Already Entered Judgment in the Underlying
          Action ..........................................................................10

     3.   The Court Should Alternatively Deem This Appeal A
          Petition For A Writ Of Mandate. ...................................12

C.   The Magistrate Judge Has No Jurisdiction To Issue What
     Amount to Contempt Sanctions. ........................................14

      1.    **The Standard of Review Advocated By Flynn Does Not Apply to Pham's Appeal, Which Presents Solely Legal Issues** ................................................................14

      2.    **Pham Did Not Consent To The Magistrate's Jurisdiction**. 14

      3.    **The Sanctions Sought To Be Imposed by the Magistrate Judge Are Contempt Sanctions Which Exceed the Magistrate Judge's Authority.** .........................................17

  **D.**    **The Sanctions Order Was Dispositive And Should Have Been Reviewed *De Novo*.** ..................................................................18

**CONCLUSION** ........................................................................................19

**CERTIFICATE OF COMPLIANCE** ..................................................20

**CERTIFICATE OF SERVICE** ............................................................21

# TABLE OF AUTHORITIES

## Cases

Abney v. United States, 431 U.S. 651 (1977)........................................ 5, 6, 9, 10, 13

Bauman v. United States Dist. Court, 557 F.2d 650 (9th Cir.1977).................. 2, 13

Bingman v. Ward, 100 F.3d 653 (9th Cir. 1996)........................................... 13, 18, 19

Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949) ............................5

Cunningham v. Hamilton County, 527 U.S. 198 (1999) ........................................11

Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863 (1994) .........................5

Estate of Kennedy v. Bell Helicopter Textron, Inc., 283 F.3d 1107
   (9th Cir. 2002) ...............................................................................................9

F.J. Hanshaw Enters. v. Emerald River Dev., 244 F.3d 1128
   (9th Cir. 2001) .............................................................................................17

Int'l Union, United Mine Workers v. Bagwell, 512 U.S. 821 (1994) ....................17

Jackson v. Vasquez, 1 F.3d 885 (9th Cir. 1993)..................................................6, 7

Kiobel v. Millson, 592 F.3d 78 (2d Cir. 2010) .......................................................8

Maisonville v. F2 Am., Inc., 902 F.2d 746 (9th Cir. 1990)...................................18

Mohawk Indus., Inc. v. Carpenter, __U.S. __ , 130 S.Ct. 599 (2009) ....................5

Nixon v. Fitzgerald, 457 U.S. 731 (1982) ...................................................... 5, 13

Osband v. Woodford, 290 F.3d 1036 (9th Cir. 2002)............................. 5, 6, 7, 8, 9

PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10 (1st Cir. 2010)...............................18

Reynaga v. Cammisa, 971 F.2d 414 (9th Cir. 1992) .............................................12

Stanley v. Woodford, 449 F.3d 1060 (9th Cir. 2006)...................................... 10, 11

Torres-Lopez v. May, 111 F.3d 633 (9th Cir. 1997) .............................................14

United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) .................................4

United States v. One 1986 Ford Pickup, 56 F.3d 1181 (9th Cir. 1995) .................10

Wagner v. Prof'l Eng'rs in Cal. Gov't, 354 F.3d 1036 (9th Cir. 2004) ...................4

## Statutes

28 U.S.C. § 636...................................................... 1, 7, 9, 13, 14, 15, 17

## SUMMARY OF REPLY

In his answering brief, Appellee Michael Flynn misconstrues the limited issues before this Court on appeal and wholly reverses his contentions below regarding the finality of the District Court's April 5, 2010 Order. Despite his arguments before the District Court that the April 5, 2010 Order rendered the Magistrate Judge's findings final and subject to *res judicata*, Flynn now argues a contrary position in an effort to avoid appellate review of the important constitutional issues presented in Pham's appeal. Nothing presented in Flynn's answering brief undercuts Pham's arguments that the District Judge cannot abdicate his Article III duties to the Magistrate Judge and then limit his review of onerous contempt sanctions under a clearly erroneous standard. As a result, Flynn's conflicting and erroneous positions should be rejected.

The Court can and should exercise jurisdiction over Pham's appeal at this time. The underlying dispute between the actual parties to the Etreppid Action has been settled and a final judgment has already been entered. The sole remaining issue is whether the attorneys for the plaintiff may now be sanctioned by a non-Article III Magistrate Judge for conduct which took place before other tribunals outside the presence of the Magistrate Judge. The sanctions sought to be imposed against the attorneys by the Magistrate Judge include, among other things, over $200,000 in monetary sanctions, 300 hours of collective community service, prohibition from practice in federal courts, and public reprimand. Because these amount to serious criminal contempt penalties, they exceed the bounds of the Magistrate Judge's authority under 28 U.S.C. § 636.

The District Court's April 5, 2010 Order satisfies the collateral order doctrine because it was the District Court's final decision to relinquish its constitutional powers to the Magistrate Judge to conduct contempt proceedings and issue contempt sanctions. As the Court has found in cases that deal with the

defenses of immunity and double jeopardy, Pham's important constitutional right to be free of magistrate jurisdiction to which she did not consent warrants appellate review of the District Court's April 5, 2010 Order. Alternatively, the factors set forth in Bauman v. United States Dist. Court, 557 F.2d 650 (9th Cir. 1977), weigh heavily in favor of the Court hearing Pham's appeal as a petition for writ of mandamus. Given the severity of the sanctions sought to be imposed and in the interest of judicial economy, immediate appeal of the District Court's order is proper and warranted. This Court should now clarify the constitutional limitations on a Magistrate Judge's authority to issue contempt sanctions under these circumstances.

## ARGUMENT

### A. Flynn's Rendition of the "Facts" is Unsupported By Evidence and, in Any Event, is Irrelevant to the Issues on Appeal

The "facts" cited by Flynn are not relevant to the limited issues before this Court: that is, could the District Judge relinquish his Article III duties to the Magistrate Judge and then only review the Magistrate Judge's issuance of onerous contempt sanctions under a clearly erroneous standard. No matter what Flynn's rendition of the "facts," as a matter of law, the answer to this question must be "no." Moreover, what Flynn denotes as "facts" are only the Magistrate Judge's erroneous findings in the Sanctions Order and not actual evidence. That Flynn could cite to no actual evidence to support his incendiary assertions underscores the errors in the Magistrate Judge's Sanctions Order and highlights why the District Court must review that order *de novo*.

Because Flynn's unsupported version of the facts is not relevant to this appeal, Pham does not waste the Court's time rebutting each baseless proposition set forth by Flynn. Pham is compelled, however, to set the record straight with regard to one particularly egregious misrepresentation by Flynn: that Pham and

Klar purportedly sought to obtain the Montgomery Parties' files in the California Action in order to circumvent the a District Court protective order. (Ans. Br. at p. 6). The record does not support Flynn's contentions:

By the time that the District Court heard Flynn's motion to withdraw, the Montgomery Parties' new counsel had already initiated the California Action. (Compare ER Vol. III at 0395-0396, Vol. VI at 01146-01150 with Vol. III at 0541-0544). Pham and Klar so informed the District Court, and the District Court acknowledged the existence of the ongoing California Action. (ER Vol. III at 0541-0545). To protect an assertion of the states secret privilege, the United States sought to impose certain conditions regarding the Montgomery Parties' files upon Flynn's withdrawal from the case. (ER Vol. III at 00543).

At the hearing on Flynn's Motion to Withdraw, Klar made clear her understanding that, as new counsel for the Montgomery Parties, the attorneys from the Liner Firm would be subject to any protective order issued by the District Court. (ER Vol. III at 0560). To that end, when applying for a writ of possession of the clients' files in the California Action, Pham attached a copy of the District Court's order granting Flynn's Motion to Withdraw, which contained the conditions imposed by the District Court to protect the government's assertion of the states secret privilege. (Vol. III at 0400, 0454, 0460-0464). In other words, the record is clear that Pham informed the California court that, to the extent that the Montgomery Parties succeeded to recover their original files from Flynn in the California Action, they would do so subject to the conditions imposed by the District Court in Nevada. (See id.). Notwithstanding Flynn's statements and the Magistrate Judge's findings to the contrary, therefore, Pham and Klar did not seek

the return of the Montgomery Parties' files in order to circumvent the District Court's protective order.[1]

## B. The Court Has Jurisdiction To Hear This Appeal

Nothing presented in Flynn's Answering Brief prevents the Court from exercising jurisdiction over Pham's appeal.[2] The District Court's April 5, 2010 order is immediately appealable under the collateral order doctrine. Alternatively, given the important constitutional considerations at issue, the Court should deem this appeal a petition for a writ of mandate and review the legal issues presented.

### 1. The District Court's April 5, 2010 Order Is Collaterally Appealable.

Nothing presented in Flynn's answering brief undercuts the fact that Pham's appeal satisfies the elements of the collateral order doctrine. As Flynn

[1] Additionally, Pham is compelled to respond to Flynn's *ad hominem* attack regarding Pham's purported motivations for bringing this appeal. (Ans. Br. at p. 26). The Court can see for itself that Flynn provides no factual support for his incendiary statements. This is because Flynn's attack is not based in fact. Rather, as is clear from Pham's Opening Brief, Pham brings this appeal to protect her right to be free from the District Judge's unconstitutional abdication of its duties to preside over contempt proceedings and issue contempt sanctions, or at a minimum, to review the Magistrate Judge's imposition of onerous sanctions under a *de novo* standard. Flynn's meritless attack on Pham highlights his proclivity to make unsupported assertions for the sole purpose of poisoning these proceedings.

[2] Flynn should be barred under the doctrine of judicial estoppel from trying to gain an advantage in this Court by arguing a position that is contrary to his arguments before the District Court that the April 5, 2010 Order was final. See United States v. Castillo-Basa, 483 F.3d 890,899 n.5 (9th Cir. 2007); Wagner v. Prof'l Eng'rs in Cal. Gov't, 354 F.3d 1036, 1044 (9th Cir. 2004). After the District Court issued the April 5, 2010 order, Flynn filed two documents in the District Court in which he argued that the Magistrate Judge's findings were "res judicata" and subject to collateral estoppel. (ER Vol. II at 202, 208). Where Flynn argued below the finality of the District Court's order when it was expedient for him, he cannot now argue a contrary position to work an advantage on appeal. Although the Court must determine for itself the existence of jurisdiction over Pham's appeal, Pham urges the Court to reject Flynn's arguments against jurisdiction on the basis of judicial estoppel.

acknowledges, the collateral order doctrine allows review of certain non-final decisions that "do not terminate the litigation, but must, in the interest of achieving a healthy legal system nonetheless be treated as final." Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867 (1994) (internal quotations and citations omitted). These immediately appealable orders include "claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546–547 (1949). To fall into this class of immediately appealable orders, a district court decision must: (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits and (3) be effectively unreviewable on appeal from a final judgment. See id. at 546; Mohawk Indus., Inc. v. Carpenter, __U.S. __ , 130 S.Ct. 599, 605 (2009).

Applying these principles, this Court and the Supreme Court have allowed immediate appeal of certain collateral orders under a number of circumstances analogous to those presented here. See, e.g., Nixon v. Fitzgerald, 457 U.S. 731, 742 (1982) (allowing collateral appeal of order rejecting claim of immunity); Abney v. United States, 431 U.S. 651, 660 (1977) (allowing collateral appeal of order denying double jeopardy defense); Osband v. Woodford, 290 F.3d 1036, 1040 (9th Cir. 2002) (allowing collateral appeal of magistrate judge's protective order restricting access to discovered materials on retrial in state court). As the Supreme Court explained:

> [i]n each case, some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interest, and mitigating the government's advantage over the individual. That is, it is not mere

> avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later.

Abney, 431 U.S. at 352-53 (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978)).

These same concerns are implicated here such that immediate review of the District Court's April 5, 2010 post-judgment order is necessary and appropriate. The District Court's order now on appeal held that a non-Article III Magistrate Judge has authority to consider and impose severe sanctions against non-consenting non-parties for non-discovery-related conduct outside of the Magistrate Judge's presence. Such a profound holding raises an important constitutional issue separate and distinct from the merits of the underlying action and from the sanctions request itself. The District Court's determination on this issue is conclusive, and would therefore effectively be unreviewable if left until further proceedings are concluded before the Magistrate Judge. Under these circumstances, the "high order value" of ensuring that Article III judges do not abdicate their constitutional powers to a Magistrate Judge whose authority is delineated solely by Congress will only be preserved if this Court provides immediate appellate review.

> **a.    The District Court's April 5, 2010 Order is a Conclusive Determination as to the Magistrate Judge's Authority to Issue Contempt Sanctions and the Standard for Review of the Magistrate Judge's Sanctions Order.**

Contrary to Flynn's position, an order need not be final as to the entire dispute in order to meet the "conclusive" requirement of the collateral order doctrine. Under the collateral order doctrine, an order conclusively determines a matter in dispute if it is "'made with the expectation that [it] will be the final word on the subject addressed.'" Osband v. Woodford, 290 F.3d 1036, 1040 (9th Cir. 2002) (quoting Jackson v. Vasquez, 1 F.3d 885, 887 (9th Cir. 1993). This Court

has found such a conclusive determination where a district court order addressed the bounds of a magistrate judge's authority.  See Osband, 290 F.3d at 1040.

In Osband, the Petitioner filed a petition in the District Court for a writ of habeas corpus arguing ineffective assistance of counsel.  Id. at 1037.  In light of the Petitioner's asserted defense, the magistrate judge granted a request by the State for discovery of certain materials that would otherwise be protected by the attorney-client privilege.  Id. at 1037-38.  In so doing, the Magistrate Judge also issued a protective order limiting the use of the materials by the State on retrial.  Id. at 1038. Applying the clear error standard of 28 U.S.C. § 636(b)(1)(A), the District Court denied a motion for reconsideration of the magistrate judge's order.  Id. at 1038.  The State appealed, arguing that the magistrate judge was without power to restrict access to the discovered materials by state law enforcement and prosecutorial officials.  Id. at 1039-40.

Finding that the District Court's denial was a "conclusive determination[] that the magistrate judge 'possessed the legal authority to issue the [protective] order,'" this Court allowed an immediate collateral appeal from the District Court's order denying reconsideration.  Id. at 1040.  In so doing, this Court concluded:

> Even if the protective order in this case is later modified to avoid prejudice to the State, the underlying issue of the legal basis for the order will not be revisited.  As to that issue, the order was 'made with the expectation that it would be the final word on the subject addressed.'

Id. (quoting Jackson v. Vasquez, 1 F.3d 885, 887 (9th Cir. 1993)).

Similarly, here, the subject to be addressed in this appeal is the Magistrate Judge's legal authority to issue contempt sanctions and the standard by which the District Court should review an order issuing such sanctions.  The District Court's April 5, 2010 Order rejected Pham's contentions that a non-Article III magistrate

judge lacks authority to consider and impose sanctions of the nature as those in the Magistrate Judge's March 31, 2009 Order, and that any such awards must be reviewed *de novo*. (ER Vol. I at 0019-0030). On those subjects, the District Court has issued a final order, and that decision will not be revisited. (See id.). The April 5, 2010 Order is therefore conclusive as to those issues and is subject to collateral review. See Osband, 290 F.3d at 1040.

> **b.** **A Magistrate Judge's Authority to Issue Contempt Sanctions and the Standard for Review of a Magistrate Judge's Sanctions Order are Important Issues Separate From the Merits of the Underlying Action and the Sanctions Request Itself.**

Flynn's assertion that the sanctions order does not "rise to the level of importance" necessary to invoke the collateral order doctrine also misses the mark. The issue on this appeal is not whether Pham should or should not be sanctioned for her conduct before the other tribunals. Rather, the narrow issues presently before this Court are whether a magistrate judge has authority to consider and issue post-judgment contempt sanctions of the type imposed here, and the appropriate standard for review of such an order. These are issues of significant import which numerous courts have grappled with in recent years. Indeed, writing separate concurring decisions, the justices of the Second Circuit very recently implored Congress and the United States Supreme Court to clarify these issues in light of their importance and the apparent split of authority among the circuits. See Kiobel v. Millson, 592 F.3d 78, 86 (2d Cir. 2010).

Moreover, these issues are separate and distinct from the merits of the underlying action over ownership of the software, for which a final judgment has already been entered. (ER Vol. IV at 0677-0704). They are also separate and distinct from the merits of the sanctions request itself in that the question of whether the law permits a magistrate judge to issue such sanctions will not be

answered by disposition of Flynn's "Amended" sanctions motion.  See Osband, 290 F.3d at 104.   The issues on this appeal can and should be adjudicated independent of the issues in that amended motion.

### c.  The Harm From Denial of An Immediate Appeal Would Be Irreparable, and the District Court's Order Would Be Effectively Unreviewable.

Absent immediate appellate review, Pham's right not to be subject to magistrate jurisdiction absent Pham's consent would be irreparably harmed.  This Court has noted that "[t]he deprivation of the right not to be tried satisfies the third collateral order condition when the right is created by an explicit statutory or constitutional guarantee that trial will not occur."  Estate of Kennedy v. Bell Helicopter Textron, Inc., 283 F.3d 1107, 1110 (9th Cir. 2002).  As explained by the Supreme Court, "the rights conferred on a criminal accused would be significantly undermined if appellate review of the double jeopardy claims were postponed until after conviction and sentence."  Abney v. United States, 431 U.S. 651, 660 (1977).  If the claim is not considered by the court of appeals, the defendant will be forced to "endure the personal strain, public embarrassment, and expense of criminal trial more than once for the same offense."  Id. at 661.  With regard to the collateral order doctrine, the Court explained: "[T]he very nature of a double jeopardy claim is such that it is collateral to, and separable from the principal issue at the accused's impending criminal trial" because the defendant is "contesting the very authority of the Government to hale him into court to face trial on the charge against him."  Id. at 659.

Here, too, Pham's rights would be significantly undermined and effectively eradicated if this appeal were to be postponed until further proceedings before the Magistrate Judge.  Under 28 U.S.C. § 636, as amended in 2000, absent consent of the parties, magistrate judges have very limited power to punish acts of contempt,

and must certify to the District Judge the facts giving rise to such contempt proceedings outside their authority. § 636(e)(2). Thus, all persons subject to such sanction proceedings have a right to be heard by the District Court in connection with such matters in the first instance, and to not be haled into court before a non-Article III magistrate judge to answer to contempt charges. See id.

Should appellate review be postponed until after Pham is once again sanctioned and admonished by the Magistrate Judge, Pham will once again be forced to endure the personal strain, public embarrassment, and expense of having to defend against and object to an erroneous decision by the Magistrate Judge.[3] The Supreme Court has held that, under such circumstances, immediate appellate review is warranted. See Abney, 431 U.S. at 661-62. Accordingly, this appeal satisfies all three prongs of the collateral order doctrine, and the Court should proceed with the review.

### 2. Consideration of Pham's Appeal Will Not Result in Piecemeal Appellate Review Because the District Court Has Already Entered Judgment in the Underlying Action

The Court's review now of whether the District Court had authority to remand to the Magistrate Judge for further sanctions proceedings will further the interests of judicial economy inherent to the final judgment rule because the underlying dispute has been resolved. Resistance to "piecemeal" appellate review is "not as decisive a consideration after judgment as before judgment since the underlying dispute is already settled." United States v. One 1986 Ford Pickup, 56 F.3d 1181, 1185 (9th Cir. 1995). For this reason, Flynn's reliance on this Court's decision in Stanley v. Woodford, 449 F.3d 1060 (9th Cir. 2006), which denied immediate appeal from a pre-judgment sanctions order, is misplaced. (Ans. Br. at

---

[3]    The Magistrate Judge's Sanctions Order drew nationwide publicity in legal journals and online media. (ER Vol. III at 0580-0594).

pp. 23, 25-26). In <u>Stanley</u>, the sanctioned attorney sought interlocutory appeal of a sanction order while the underlying action was ongoing. <u>See id.</u> at 1062. Citing to <u>Cunningham v. Hamilton County</u>, 527 U.S. 198 (1999), the Court concluded that it lacked jurisdiction to hear the attorney's appeal from the imposition of sanctions. <u>Id.</u> at 1063-65.

<u>Stanley</u> is distinguishable from Pham's appeal in two primary ways. First, the parties to the underlying Etreppid Action settled their dispute, and the District Court entered judgment long ago. (ER Vol. IV at 0677-0704). This Court's review of the issues presented in Pham's appeal, therefore, will not result in the piecemeal consideration of that case. In fact, no appeal of the underlying merits of the Etreppid Action was ever taken. As a result, the post-judgment procedural posture of this appeal undercuts Flynn's citation to <u>Stanley</u>. <u>See id.</u>

Second, Pham does not appeal from an order imposing sanctions, as was presented in <u>Stanley</u>. <u>See id.</u> at 1063. Rather, she seeks appellate review of an important constitutional issue regarding the Magistrate Judge's authority to preside over sanctions proceedings and issue sanctions that amount to contempt. Pham further seeks a determination that the District Court erred when concluding that its review of the Magistrate Judge's Sanctions Order was limited to a clearly erroneous rather than a *de novo* standard. These issues are separate and apart from the imposition of sanctions such that the <u>Stanley</u> decision is distinguishable.

The concerns regarding piecemeal appellate review set forth in <u>Stanley</u> are not implicated here because judicial economy will best be served if the Court considers Pham's appeal now. Absent the exercise of appellate jurisdiction, the following scenario could play out: Pursuant to the District Court's April 5, 2010 Order remanding to the Magistrate Judge for further sanctions proceedings, the Magistrate Judge would again improperly preside over a lengthy evidentiary hearing and issue an order imposing sanctions against Pham. On Pham's

objection, as it did in the April 5, 2010 order, the District Court would again incorrectly apply the clearly erroneous standard of review. Should the District Court affirm the Magistrate Judge's sanctions order under the clearly erroneous standard (after yet another year or more of briefing and argument), the issue of the Magistrate Judge's authority would again be before this Court on appeal. Pham would be caught in an enormously protracted and costly ping pong match, bouncing back and forth between the District Court and the Magistrate Judge until such time that the District Court finally affirms or denies any sanctions request. Disposition by this Court now on whether the Magistrate Judge has authority to issue the sanctions sought in this case would therefore promote judicial economy.

### 3. The Court Should Alternatively Deem This Appeal A Petition For A Writ Of Mandate.

In the alternative, because of the compelling constitutional issues presented by this appeal, Pham requests that it be reviewed as a petition for writ of mandamus. Where a court of appeals determines that it lacks jurisdiction because the order being appealed from is not final, it has discretion to construe the appeal as a petition for writ of mandamus. Reynaga v. Cammisa, 971 F.2d 414, 418 (9th Cir. 1992). In fact, where a magistrate judge exceeded his jurisdiction such that his purported action was a "legal nullity" and would cause a litigant to "suffer serious injustices," this Court deemed the appeal to be a petition for writ of mandamus over which it exercised jurisdiction. See id. To be heard as a petition for writ of mandamus, the Court considers five factors:

> (1) Whether the petitioner has any other means, such as a direct appeal, to attain the relief she desires;
>
> (2) Whether the petitioner will be damaged or prejudiced in a way not correctable on later appeal;
>
> (3) Whether the district court's order is clearly erroneous as a matter of law;

(4)     Whether the district court's order is a recurring error or manifests a persistent disregard of the federal rules;

(5)     Whether the district court's order raises new and important problems or issues of law of first impression.

Bauman v. United States Dist. Court, 557 F.2d 650, 654-655 (9th Cir.1977). The Bauman factors are "guidelines" not requirements, and proper disposition by the court of appeals "will often require a balancing of conflicting indicators." Id. at 655.

The balancing of the Bauman factors weighs in favor of mandamus review here. To the extent that the Court does not exercise jurisdiction under the collateral order doctrine, Pham has no other protection from being improperly subjected to the Magistrate Judge's unauthorized contempt proceedings. Because the District Court has remanded the contempt proceedings to the Magistrate Judge without Pham's consent and subject only to a clearly erroneous standard of review, Pham will be prejudiced in a way not correctable on later appeal. Like immunity and double jeopardy defenses, the damage cannot be undone if the District Judge is allowed to abdicate his Article III authority to the Magistrate Judge. See Nixon v. Fitzgerald, 457 U.S. 731, 742 (1982); Abney v. United States, 431 U.S. 651, 660 (1977).

Moreover, the District Judge's ruling that the Magistrate Judge has authority to hold contempt proceedings and impose harsh contempt sanctions is clearly erroneous. See 28 U.S.C. § 636; Bingman v. Ward, 100 F.3d 653, 656 (9th Cir. 1996). The District Judge's error is compounded by his holding that the Magistrate Judge's *ultra vires* proceedings are not reviewable *de novo.* See id. This particular error now has occurred twice in this case, where the District Judge allowed the Magistrate Judge to issue an order on Flynn's motion for sanctions in the first instance and then remanded to the Magistrate Judge for further sanctions

proceedings. Finally, because the bounds of the Magistrate Judge's authority under 28 U.S.C. § 636 is a matter of first impression in this circuit, immediate appellate review is warranted.

## C. The Magistrate Judge Has No Jurisdiction To Issue What Amount to Contempt Sanctions.

### 1. The Standard of Review Advocated By Flynn Does Not Apply to Pham's Appeal, Which Presents Solely Legal Issues

Flynn's proposed standard of review reflects his grievous misunderstanding of the matter now before the Court. The sole issues on appeal are legal in nature: whether the District Court erred by (1) relinquishing its contempt power to a non-Article III Magistrate Judge; (2) subjecting Pham to further sanctions proceedings before the Magistrate Judge that fall outside of the Magistrate Judge's powers under 28 U.S.C. § 636; and (3) reviewing the Magistrate Judge's sanctions under clearly erroneous standard. Pham is not asking the Court to review the propriety of the sanctions themselves. Since the only issues presented on appeal are issues of law, this Court's review is *de novo*. See Torres-Lopez v. May, 111 F.3d 633, 638 (9th Cir. 1997).

### 2. Pham Did Not Consent To The Magistrate's Jurisdiction

Flynn's contention that Pham consented or agreed to the Magistrate Judge's authority to issue sanctions against her is simply without merit for a number of reasons. First, Pham was not a party to the underlying litigation and therefore could not have consented to such jurisdiction. Section 636 clearly states that, to be effective, the consent to magistrate jurisdiction can only come from the "parties." See 28 U.S.C. § 636(c)(1).

Second, section 636 requires district courts to set forth specific procedural requirements regarding the parties' consent to magistrate jurisdiction:

> If a magistrate judge is designated to exercise civil jurisdiction under [28 U.S.C. § 636(c)(1)], the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent.

28 U.S.C. § 636(c)(2). In the District of Nevada, consent to magistrate jurisdiction occurs through the parties' submission of a specific consent form. See D. Nev. L.R. 2-2(b) ("after consent forms have been executed and submitted by all parties the clerk shall transmit the case and the consent forms to the district judge to whom the case has been assigned for consideration of referral of the case to a magistrate judge.")

No such consent form was submitted by the parties or Pham in the Etreppid Action. As a non-party, Pham never received or submitted a consent form to the District Court clerk. Moreover, Pham was never notified that she was free to withhold her consent from the Magistrate Judge's jurisdiction over Flynn's motion for sanctions. In fact, the District Court held that Pham had no notice that she personally would be subject to sanctions. (ER Vol. I at 00034). It is illogical that Pham could consent to something of which she had no notice. Flynn's argument that Pham consented to magistrate jurisdiction is just wrong.

Indeed, the Order by which Flynn contends Pham consented to the Magistrate Judge's jurisdiction does not say anything about **anyone's** consent to magistrate jurisdiction. (SER 00033-34). Rather, the order is signed by both the District Judge and the Magistrate Judge and states that "**this Court** shall retain jurisdiction over" *inter alia*, Flynn's motion for sanctions. (Id. (emphasis added)). In any event, Pham did not participate in the settlement conference during which

the parties to the litigation, according to Flynn, purportedly agreed to the Magistrate Judge's authority to rule upon the sanctions motion. As the face of order shows, Pham was not a party to the settlement. (Supp. ER 00003). Moreover, the minutes of the September 17, 2008 settlement conference filed by the Magistrate Judge identifies the counsel who were present, and Pham was not one of them. (ER Vol. VII at 1409). Because she was not a party and was not present, to the extent that the September 17, 2008 order of the District Court can be construed as a consent of the parties to the Magistrate Judge's jurisdiction (which Pham steadfastly disputes), Pham could not and did not personally agree to the Magistrate Judge's authority to rule on the Sanctions Motion.

Third, as the District Court confirmed in its April 5, 2010 Order, the Sanctions Motion was not made against Pham. (ER Vol. I at 0033-0036). Indeed, after the District Court issued the April 5, 2010 order, Flynn filed an amended sanctions motion that named Pham personally. (ER Vol. II at 0197-0204). In so doing, Flynn acknowledged that Pham was not a subject of his original Sanctions Motion at the September 18, 2008 settlement conference. As a result, Pham did not and could not have consented to the Magistrate Judge's jurisdiction to hear any sanctions request against her.

Fourth, to the extent that any of the parties or counsel did consent to the Magistrate Judge's authority to rule on Flynn's original Sanctions Motion, that consent did not extend to any new or "Amended" sanctions request, as Flynn has presented to the Magistrate Judge. (ER Vol. II at 0197-0204). Particularly in light of Congress' intent "to protect the voluntariness of the parties' consent," nothing in the record below can be construed as Pham's consent to the Magistrate Judge's authority to issue sanctions against her. See 28 U.S.C. § 636(c)(2).

3. **The Sanctions Sought To Be Imposed by the Magistrate Judge Are Contempt Sanctions Which Exceed the Magistrate Judge's Authority.**

Despite at least nine references to contempt of the court's orders in the Magistrate Judge's March 31, 2009 Sanctions Order, Flynn now claims that the penalties sought to be imposed on Pham were mere "sanctions" and not "contempt" penalties. (Ans. Br. at 26-34). In so doing, Flynn ignores the Magistrate Judge's own acknowledgment in her Sanctions Order that the sanctions were intended to punish Pham for what the Magistrate Judge erroneously believed to be a "pattern of contempt for this court's orders and the legal system." (ER Vol. I at 0091). No matter what they are labeled, the nature of the sanctions rise to the level of contempt penalties and exceeded the clear limitations on the Magistrate Judge's contempt authority under 28 U.S.C. § 636(e). See Int'l Union, United Mine Workers v. Bagwell, 512 U.S. 821, 827-29 (1994); F.J. Hanshaw Enters. v. Emerald River Dev., 244 F.3d 1128, 1138 (9th Cir. 2001).

Specifically, as discussed in Pham's Opening Brief, a magistrate judge lacks authority to impose sanctions and must certify the facts to the District Judge for review if: (i) the alleged criminal act does not occur in the magistrate's presence; (ii) the penalties to be imposed exceed $5,000, or (iii) the alleged act is one involving civil contempt. 28 U.S.C. § 636(e)(6)(B). Here, Flynn contends in his answering brief -- without any actual evidentiary support -- that the alleged misconduct did occur in the presence of the Magistrate Judge but that the sanctions are not criminal in nature. (Ans. Br. at pp. 31-33). The actual evidentiary record contradicts Flynn's unsupported contentions. (ER Vol. I at 0090-0091; Vol. III at 0395-0402, 0415-0485, 0494-0502). Even according to Flynn's argument that the sanctions sought to be imposed are civil in nature, however, they cannot be imposed by the Magistrate Judge but rather must be certified to the District Judge for consideration. See 28 U.S.C. § 636(c)(1).

**D.    The Sanctions Order Was Dispositive And Should Have Been Reviewed *De Novo*.**

Citing only the pre-2000 case of <u>Maisonville v. F2 Am., Inc.</u>, 902 F.2d 746 (9th Cir. 1990), which dealt with a nominal monetary sanction under Rule 11, Flynn contends that all sanctions of any kind under Section 1927 and the Court's inherent authority are nondispositive.  (Ans. Br. at pp. 35-36).  The facts of <u>Maisonville</u> are clearly distinguishable and cannot be applied in this blanket fashion.  In <u>Maisonville</u>, the magistrate judge sanctioned plaintiff's counsel a mere $1,000 under Rule 11 for filing a frivolous motion for reconsideration relating to a discovery motion.  902 F.2d at 747.  The district judge affirmed the sanctions order and the plaintiff's counsel appealed.  Under those facts, this Court determined that the sanctions imposed were non-dispositive and affirmed the order.  <u>Id.</u> at 748.

Here, by contrast, the Magistrate Judge sanctioned Montgomery and his counsel, including Pham, over $200,000, jointly and severally.  (ER Vol. I at 0090).  The Magistrate Judge also barred Pham from practice in the Nevada District Court for 5 years, and ordered Pham to complete 100 hours of community service.  (ER Vol. I at 0090-0091).  Flynn offers no authority to support his contention that such severe and harsh penalties are non-dispositive under any statutory provision for sanctions or under the Court's inherent authority.

Indeed, there is no authority for Flynn's contention that any sanctions under section 1927 and the court's inherent authority are, by definition, non-dispositive.  Sound interpretation of the constitutional limitations on judicial powers under Article III mandates that exercise of the court's contempt authority and sanctioning power, particularly under the court's inherent authority, be confined to actual Article III judges, or at the very least, subject to *de novo* review of an Article III judge.  <u>See</u> <u>Bingman v. Ward</u>, 100 F.3d 653, 656 (9th Cir. 1996); <u>PowerShare, Inc. v. Syntel, Inc.</u>, 597 F.3d 10, 13 (1st Cir. 2010).  Accordingly, the District Court

erred in reviewing the Magistrate Judge's Sanctions Order under a clearly erroneous standard and remanding to the Magistrate Judge for further sanctions proceedings. At most, the Sanctions Order could only be deemed a report and recommendation subject to *de novo* review in its entirety. See Bingman, 100 F.3d at 656.

## CONCLUSION

For all the foregoing reasons and the reasons set forth in Pham's Opening Brief, this Court should reverse the District Court's order and direct the District Court to conduct its own contempt proceedings should the District Court wish to entertain any further sanctions proceedings against Pham. At a minimum, the District Court must construe the Magistrate Judge's March 31, 2009 Sanctions Order as a report and recommendation and review it *de novo*.

Date:  December 1, 2010.

McDONALD CARANO WILSON LLP


/s/ Debbie Leonard
JOHN FRANKOVICH
LEIGH GODDARD
DEBBIE LEONARD

Attorneys for Appellant Teri Pham

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 28.1(e)(2)(B) and 32-1, I certify that the Appellant's Reply Brief is proportionately spaced, has a typeface of 14 point, and contains 5,922 words.

Date:  December 1, 2010.

McDONALD CARANO WILSON LLP

/s/ Debbie Leonard
JOHN FRANKOVICH
LEIGH GODDARD
DEBBIE LEONARD

Attorneys for Appellant Teri Pham

## CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number: 10-15958.

I hereby certify that on December 1, 2010, I electronically filed the foregoing with the Clerk of het Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

Michael J. Flynn
P.O. Box 690
6125 El Tordo
Rancho Santa Fe, CA 92067

Gary R. Goodheart
Bradley S. Schrager
Jones Vargas
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada
Attorneys for Deborah Klar

Jason M. Rund
Sheridan & Rund
840 Apollo Street, Suite 351
El Segundo, CA 90245

Ellyn S. Garofalo
Liner Yakelevitz Sunshine &
    Regenstreif
1100 Glendon Avenue
Los Angeles, CA 90024

/s/ Pamela Miller
Pamela Miller